## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

BLACK BEAR, INC.,
A Michigan corporation

      Plaintiff,

v.                                                     Case No. 2:21-cv-00100-RJJ-MV
                                                       Hon. Robert J. Jonker
LAC LA BELLE LODGE, INC.                               Magistrate Maarten Vermaat


      Defendant.

---

### FIRST AMENDED
### ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND

    Defendant Lac La Belle Lodge, Inc. ("Lac LaBelle"), by its attorneys, says the following

as its Answer to the Complaint filed against them by Plaintiff Black Bear, Inc. ("Black Bear"):

### Parties, Jurisdiction and Venue

    1.    Plaintiff is a Michigan corporation with a registered office located in Houghton,

Houghton County, Michigan.

**ANSWER:  Admitted on information and belief.**

    2.    Defendant is a Michigan corporation located in Lac LaBelle, Keweenaw County,

Michigan.

**ANSWER:  Admitted.**

    3.    The Court has subject matter jurisdiction over this lawsuit pursuant to 15 U.S.C. §§

1121, 1125 (Trademark Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1367

(supplemental jurisdiction).

**ANSWER:  No contest.**

1

4.      The Court has personal jurisdiction over Defendant because Defendant is a Michigan corporation that resides and conducts business in Michigan, and events giving rise to this lawsuit occurred in Michigan.

**ANSWER: Lac LaBelle does not contest jurisdiction, but denies that the alleged "events" give rise to any action.**

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this judicial district and a substantial part of the events or omissions that give rise to Plaintiff's claims occurred and are occurring in this district.

**ANSWER: Lac LaBelle does not contest venue, but denies that the alleged "events or omissions" give rise to any action.**

**Statement of Facts**

6.      Formed on January 18, 2000, Plaintiff owns and operates the Mount Bohemia ski area located in Lac La Belle, Keweenaw County, Michigan.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

7.      Mount Bohemia is well known for providing the Midwest's only "extreme" skiing environment, with the majority of its terrain being suitable only for highly skilled skiers and snowboarders. It boasts the longest vertical runs in the Midwest and, with an average yearly snowfall on the Keweenaw Peninsula of around 273 inches, the deepest powder.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

8.      Mount Bohemia has been touted in numerous newspaper, magazine, and internet articles as a top skiing destination, not just within the Midwest, but throughout the United States,

due to its challenging and scenic terrain, the value it offers skiers, and the rugged, no frills nature of the property, among other things. It has built a dedicated following among hard-core skiers and snowboarders.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

9.      Plaintiff also provides lodging at and near Mount Bohemia, operates a spa and bar on the property, and sells branded merchandise, like t-shirts, stickers, and magnets.

**ANSWER: Admitted.**

10.      Plaintiff owns four United States registrations for MOUNT BOHEMIA service marks and trademarks, two for standard character marks and two for design marks, as detailed below.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

11.      Plaintiff owns U.S. Registration No. 6124706, issued on the USPTO's Principal Register on August 11, 2020, for the standard character mark MOUNT BOHEMIA, for use with "Stickers; Stickers and decalcomanias; Bumper Stickers; Magnetic bumper stickers; Removable stickers; Reusable stickers," in International Class 16. **Ex. A** (U.S. Registration No. 6124706). Plaintiff has been using this mark in association with the goods identified in the registration since at least as early as December 31, 2004.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

12.      Plaintiff also owns U.S. Registration No. 6135271, issued on the USPTO's Principal Register on August 25, 2020, for the standard character mark MOUNT BOHEMIA, for

use with "Hats; Sweatshirts; Tee-shirts; Baseball caps and hats," in International Class 25, and "Ski resorts; Provision of facilities for winter sports," in International Class 41. **Ex. B** (U.S. Registration No. 6135271). Plaintiff has been using this mark in commerce in association with the goods and services identified in the registration since at least as early as December 31, 2000.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

13.     Plaintiff also owns U.S. Registration No. 6254812 for the MOUNT BOHEMIA design mark shown below, issued on the USPTO's Principal Register on January 26, 2021, for use with "Baseball caps and hats; Hats; Sweatshirts; Tee-shirts," in International Class 25 and "Ski resorts; Provision of facilities for winter sports," in International Class 25. **Ex. C** (U.S. Registration No. 6254812):



Plaintiff has been using this mark in commerce in association with the goods and services identified in the registration since at least as early as December 31, 2004.

**ANSWER: Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

14.     Plaintiff also owns U.S. Registration No. 6254865 for the MOUNT BOHEMIA design mark shown below, issued on the USPTO's Principal Register on January 26, 2021, for use with "Stickers; Bumper stickers; Decorative stickers for helmets; Magnetic bumper stickers;

Removable stickers; Reusable stickers," in International Class 16. **Ex. D** (U.S. Registration No. 6254865):



Plaintiff has been using this mark in commerce in association with the goods identified in the registration since at least as early as December 31, 2004.

**ANSWER:** **Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

15.     Through Plaintiff's marketing and customer service efforts, its extensive use in commerce of its MOUNT BOHEMIA marks, the press coverage Plaintiff has received, and the attention it receives through social media and by word of mouth, without exclusion, Plaintiff has built up substantial name recognition and goodwill in its MOUNT BOHEMIA marks.

**ANSWER:** **Lac LaBelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

16.     Defendant owns operates the Lac La Belle Lodge, which is located within one mile of the Mount Bohemia ski area.

**ANSWER:** **Admitted.**

17.     Defendant's business includes the operation of a convenience store, through which it offers for sale to the public a variety of items, including hats, tee shirts, magnets, and stickers.

**ANSWER:** **Admitted.**

18.     The merchandise Defendant sells and has sold includes items bearing Plaintiff's MOUNT BOHEMIA mark.

**ANSWER: Denied as untrue. Any use of the phrase "Mount Bohemia" on merchandise sold by Lac Labelle has been in a descriptive, geographically descriptive, non-trademark, or otherwise fair manner.**

19.     For example, as depicted in the screenshot below, taken from Defendant's website at www.laclabellelodge.com/convenience-store, Defendant sells, and has sold, stickers or magnets bearing Plaintiff's MOUNT BOHEMIA mark, including at least one item containing a representation of a person downhill skiing:



*Pint glasses $7.99 each*

**ANSWER: Denied as untrue, except to admit that the words "Mount Bohemia" appear on some of the pictured merchandise, and that the figure of a person skiing appears on the indicated sticker.**

20.     Defendant also sells, and has sold, apparel bearing Plaintiff's MOUNT BOHEMIA mark, including tee shirts, as indicated in the screen shot below, also taken from Defendant's website:



Winter Hats $23.95
Hats $26.95

Mountain Bohemia Long Sleeve Tee
Colors: Port Wine (pictured), Teal

**ANSWER: Denied, except to admit that the words "Mount Bohemia" appear on some of the pictured merchandise.**

21.    Defendant's sale of clothing and other merchandise bearing Plaintiff's MOUNT BOHEMIA is without Plaintiff's authorization.

**ANSWER: Denied as untrue.**

22.    Plaintiff sent a letter to Defendant, dated May 3, 2021, advising that Defendant's sale of merchandise bearing Plaintiff's MOUNT BOHEMIA mark was in violation of Plaintiff's rights in its marks under federal and state law and requesting that Defendant, in the future, cease and desist from any further sales of such merchandise.

**ANSWER: Lac Labelle denies the accuracy and legal basis of the letter, but admits receiving it.**

23.    Defendant has indicated that it does not intend to cease its sales of infringing merchandise, as exemplified by the fact that such merchandise appears on its website as of the date of filing of this Complaint.

**ANSWER: Lac Labelle denies selling any infringing merchandise, but admits that it has continued to sell merchandise bearing the words "Mount Bohemia," because it has the right to do so.**

24.     Defendant's unauthorized sales of merchandise bearing Plaintiff's MOUNT BOHEMIA mark, past, present, and future, constitute intentional and willful infringement of Plaintiff's rights in its marks.

**ANSWER: Denied as untrue.**

## COUNT I

**Trademark Infringement in Violation of Section 32
of the Lanham Act, 15 U.S.C. § 1114**

25.     Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth here.

**ANSWER: Lac Labelle incorporates herein by reference each of the preceding paragraphs.**

26.     Plaintiff owns registrations for four MOUNT BOHEMIA marks, as described above.

**ANSWER: Lac Labelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

27.     By its actions described above, Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's MOUNT BOHEMIA mark in connection with the sale, offering for sale, distribution, or advertising of goods in a manner that is likely to cause confusion, to cause mistake, or to deceive as to the source of the goods, as to an affiliation between Plaintiff and Defendant, or as to Plaintiff's endorsement, sponsorship, or approval of Defendant's goods or the marketing and distribution thereof.

**ANSWER: Denied as untrue.**

28.     Defendant's use of such reproduction, counterfeit, copy, or colorable imitation of Plaintiff's MOUNT BOHEMIA mark is without the permission, authority, or consent of Plaintiff, constituting a violation of Plaintiff's rights in its marks.

**ANSWER: Denied as untrue.**

29.     Defendant's violation of Plaintiff's rights in its MOUNT BOHEMIA marks was, and is, knowing, willful, and intentional.

**ANSWER: Denied as untrue.**

30.     Plaintiff has suffered harm because of Defendant's unlawful conduct, including, but not limited to, monetary damages and injury to its rights in its marks that can be remedied only by injunctive relief.

**ANSWER: Denied as untrue.**

31.     Based on the foregoing, Defendant is liable to Plaintiff for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Plaintiff is entitled to all remedies as may be available for a violation thereof.

**ANSWER: Denied as untrue.**


## COUNT II

**Federal Unfair Competition and False Designation of Origin
Under Section 43 of the Lanham Act, 15 U.S.C. § 1125**

32.     Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth here.

**ANSWER: Lac Labelle incorporates herein by reference each of the preceding paragraphs.**

33.     By its use of Plaintiff's MOUNT BOHEMIA mark as described above, Defendant has used in commerce a word, term, name, symbol or device, or combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff.

**ANSWER: Denied as untrue.**

34.     Said use by Defendant is without the permission, authority, or consent of Plaintiff, constituting a violation of Plaintiff's rights in its MOUNT BOHEMIA marks.

**ANSWER: Denied as untrue.**

35.     Defendant's violation of Plaintiff's rights in its MOUNT BOHEMIA marks was, and is, knowing, willful, and intentional.

**ANSWER: Denied as untrue.**

36.     Plaintiff has suffered harm because of Defendant's unlawful conduct, including, but not limited to, monetary damages and injury to its rights in its marks that can be remedied only by injunctive relief.

**ANSWER: Denied as untrue.**

37.     Based on the foregoing, Defendant is liable to Plaintiff for unfair competition and/or false designation under Section 43 of the Lanham Act, 15 U.S.C. § 1125, and Plaintiff is entitled to all such remedies as may be available for a violation thereof.

**ANSWER: Denied as untrue.**

## COUNT III

### Common Law Unfair Competition/Trademark Infringement

38.     Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth here.

**ANSWER: Lac Labelle incorporates herein by reference each of the preceding paragraphs. Further, to the extent this Count alleges claims based on state law, Lac Labelle is not required to answer them because they have been dismissed by the Court. The following answers are given in the event that Plaintiff alleges these claims under federal law.**

39.     Plaintiff has continuously and extensively used its MOUNT BOHEMIA marks in commerce and, based on such use, Plaintiff is the owner of protected common law rights in its marks.

**ANSWER: Lac Labelle does not have sufficient first-hand knowledge to confirm or deny this allegation.**

40.     Defendant has wrongfully used and continues to use Plaintiff's MOUNT BOHEMIA mark in commerce in connection with the advertising, promotion, and sale of unauthorized goods.

**ANSWER: Denied as untrue.**

41.     Such use by Defendant is likely to cause confusion or mistake, or to deceive as to an affiliation, connection, or association between Defendant and Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

**ANSWER: Denied as untrue.**

42.     Defendant's misuse of Plaintiff's MOUNT BOHEMIA mark constitutes common law unfair competition or trademark infringement.

**ANSWER: Denied as untrue.**

43. Because of Defendant's unlawful conduct, Plaintiff has suffered harm including, but not limited to, money damages and injury to its rights in its marks that can be remedied only by injunctive relief.

**ANSWER: Denied as untrue.**

**COUNT IV**

**Violation of the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq*.**

44-46. **Lac Labelle is mot required to answer these allegations because they have been dismissed by the Court.**

Wherefore, Lac Labelle prays that the Court enter judgment in favor of Lac Labelle and against Black Bear, and issue monetary damages, equitable relief, attorneys' fees, costs, and any other relief the Court deems just and warranted.

**Affirmative Defenses**

1. Plaintiff has failed to state a claim for which relief may be granted.

2. Some or all of Plaintiff's claims are barred by accord and satisfaction, waiver, estoppel, consent, acquiescence, and/or release. For instance, Plaintiff's owner has previously requested changes to Defendant's subject merchandise that did not include removal of the words "Mount Bohemia."

3. Some or all of Plaintiff's claims are barred by laches or the appropriate statute of limitations. For instance, Plaintiff's owner has been aware of Defendant's subject merchandise for more than three years but never took action to challenge its sale.

4. Plaintiff's equitable relief is barred by the doctrine of unclean hands.

5. Defendant's use of the phrase "Mount Bohemia" is descriptive, geographically descriptive, a non-trademark use, and/or otherwise fair and non-actionable. For instance, the geological landform on which Plaintiff's ski resort sits is known as "Mount Bohemia," and

12

Defendant's subject merchandise uses the phrase "Mount Bohemia" in good faith to refer to this geographic place name.

6.      Plaintiff has not mitigated its damages.

7.      Plaintiff has not been damaged by Defendant's sale of the subject merchandise.

8.      Alternatively, Defendant is a good-faith user of the MOUNT BOHEMIA mark, and has been using the mark consistently since before the date on which Plaintiff applied to register its marks. Even Black Bear admits this; in its responses to Lac Labelle's first set of discovery requests, Black Bear admits it was aware of Lac Labelle selling clothing bearing the words "Mount Bohemia" at least as early as February 2019. Therefore, under 15 U.S.C. § 1052(d), *Allard Enterprises v. Advanced Programming Resources*, 249 F. 3d 564 (6th Cir. 2001), and/or the *Tea Rose-Rectanus* doctrine, Defendant's rights to the use of MOUNT BOHEMIA are superior to, and carved out from, those protected by Plaintiff's trademark registrations.

9.      Alternatively, Defendant is the successor in interest to entities that have owned and used the MOUNT BOHEMIA mark in commerce since before Plaintiff began its use, and therefore Defendant is the senior user of the mark and has rights in it superior to those of Plaintiff.

10.     Defendant's use of the phrase "Mount Bohemia" is aesthetically functional, because the phrase contributes to the value of the goods on which it is used and thus aids the performance of the object for which the goods are intended. It makes the goods more aesthetically pleasing or commercially desirable rather than performing a source-identifying function.

11.     Use of the phrase "Mount Bohemia" on clothing and other merchandise does not perform a trademark function. It is merely a decorative or ornamental feature of the goods.

Defendant reserves the right to amend or add to these defenses as discovery progresses.

## Counterclaims

Defendant/Counter-Plaintiff Lac La Belle Lodge, Inc. ("Lac Labelle"), for its counterclaims against Plaintiff/Counter-Defendant Black Bear, Inc. ("Black Bear"), says:

### Parties, Jurisdiction, and Venue

1.       Lac Labelle is a Michigan corporation with its principal place of business in Keweenaw County, Michigan.

2.       Black Bear is a Michigan corporation with its principal place of business in Keweenaw County, Michigan.

3.       The Court has subject matter jurisdiction over Lac Labelle's counterclaims because they arise under federal law, namely, the Lanham Act.

4.       The Court has personal jurisdiction over Black Bear because it is located in this district, the events at issue occurred in this district, and Black Bear has already admitted jurisdiction by filing this lawsuit in this Court.

5.       Venue is proper in this Court because Black Bear is located in this district, the events at issue occurred in this district, and Black Bear and has already admitted venue by filing this lawsuit in this Court.

### Count I: Cancellation (Geographic Descriptiveness)

6.       Lac Labelle incorporates herein by reference each of the foregoing paragraphs.

7.       Black Bear purports to own, and has asserted against Lac Labelle, U.S. Trademark Registration Nos. 6135271, 6124706, 6254812, and 6254865 (the "Registrations"). These registrations cover the mark MOUNT BOHEMIA in word or stylized form.

8.       The stylized form of Black Bear's MOUNT BOHEMIA mark depicts the image of a hill in the lower center of the image.

9.     The Examining Attorney reviewing Black Bear's trademark application that became Reg. No. 6135271 required Black Bear to disclaim exclusive rights in the word "Mount," because "because it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services.... According to applicant's specimens, its services take place on mountains." Black Bear complied, and amended its application to make that disclaimer.

10.     Black Bear operates a ski resort located on a hill in Keweenaw County, Michigan.

11.     The hill upon which Black Bear locates and operates its ski resort business is called Mount Bohemia.

12.     "Mount Bohemia" is the official governmental designation of the hill upon which Black Bear operates its ski resort business.

13.     "Mount Bohemia" is the name used by residents of Keweenaw County to describe the hill upon which Black Bear operates its ski resort business.

14.     The hill upon which Black Bear operates its ski resort business was called "Mount Bohemia" before Black Bear began operating there.

15.     The hill upon which Black Bear operates its ski resort business was called "Mount Bohemia" before Black Bear began use of the MOUNT BOHEMIA marks.

16.     Black Bear knew that the hill upon which Black Bear now operates its ski resort business was called "Mount Bohemia" before Black Bear began using the MOUNT BOHEMIA mark.

17.     Indeed, in its responses to Lac Labelle's first set of discovery requests, Black Bear admitted that "Black Bear is aware that the hill on which it operates its ski resort was commonly

referred to within the Keweenaw County community as 'Mount Bohemia' before Black Bear began its operations in 2000."

18.     The primary meaning of the phrase "Mount Bohemia," when used in relation to the area in which Black Bear operates, is to signify the name of the hill on which Black Bear operates, rather than to signify Black Bear.

19.     The MOUNT BOHEMIA marks covered by Black Bear's Registrations are primarily geographically descriptive.

20.     Pursuant to 15 U.S.C. §1052(d) and related law, the Registrations should be cancelled.

### Count II – Cancelation (Fraud)

21.     Lac Labelle incorporates herein by reference each of the foregoing paragraphs.

22.     Black Bear's U.S. Registration No. 6124706 covers the mark MOUNT BOHEMIA with respect to "Stickers; Stickers and decalcomanias; Bumper stickers; Magnetic bumper stickers; Removable stickers; Reusable stickers" in International Class 16.

23.     Black Bear's U.S. Registration No. 6135271 covers the mark MOUNT BOHEMIA with respect to "Hats; Sweatshirts; Tee-shirts; Baseball caps and hats" in International Class 25 (in addition to other services).

24.     Lac Labelle will refer to these two registrations as the "Fraudulent Registrations," and to the applications that led to the Fraudulent Registrations as the "Fraudulent Applications."

25.     Both the company operating at Lac Labelle's location before Lac Labelle and others openly used the phrase "Mount Bohemia" on shirts, clothing, stickers, and similar merchandise long before Black Bear began such use. Black Bear owner Lonie Glieberman frequented the Lac Labelle establishment many times a year, dining there multiple times throughout the winter season.

During said times, merchandise bearing the phrase "Mount Bohemia" was prominently displayed throughout the restaurant and store. Lac Labelle staff even wore some of the clothing bearing the phrase Mount Bohemia as their uniforms were derived from merchandise sold in the establishment. Therefore, it is inevitable that Lonie saw this merchandise during his visits to Lac Labelle, and he did not object to it.

26.     Indeed, in its responses to Lac Labelle's first discovery requests, Black Bear admits that Glieberman saw clothing bearing the words "Mount Bohemia" being sold by Lac Labelle and worn by its waitstaff as early as February 2019, and that he did nothing about it until more than two years later.

27.     Lac Labelle sold clothing bearing the phrase "Mount Bohemia" at least as early as December 15, 2000, which precedes Black Bear's alleged date of first use.

28.     Before Black Bear began use of the phrase "Mount Bohemia" on clothing and other merchandise, the phrase "Mount Bohemia" was in widespread use on clothing and/or other merchandise sold in and around Keewenaw County, Michigan as a common descriptive name for the hill upon which Black Bear now operates.

29.     Before Black Bear filed its Fraudulent Applications, it was aware of this common descriptive use of the phrase "Mount Bohemia." Indeed, in its responses to Lac Labelle's first set of discovery requests, Black Bear admitted that "Black Bear is aware that the hill on which it operates its ski resort was commonly referred to within the Keweenaw County community as 'Mount Bohemia' before Black Bear began its operations in 2000."

30.     On multiple occasions, Black Bear's principal, Lonie Glieberman, demonstrated his awareness of the fact that he did not, and could not, own the exclusive right to use "Mount Bohemia" on clothing.

31.     For example, in or around 2013 or 2014, Glieberman confronted Lac Labelle about a shirt it was selling that used the words "Mount Bohemia" and depicted a snowmobile. Glieberman insisted that Lac Labelle remove the snowmobile, but not that it stop using the phrase "Mount Bohemia."

32.     Several other local business owners have sold clothing and other merchandise bearing the phrase "Mount Bohemia" over the past several decades, usually without objection from Glieberman. Indeed, local businesses were selling shirts bearing the phrase "Mount Bohemia" long before Black Bear even existed or opened its ski resort.

33.     On information and belief, Before it applied to register its Mount Bohemia Marks, Black Bear was aware that others had been selling merchandise bearing the phrase "Mount Bohemia" before it did.

34.     Black Bear was aware that others had been selling merchandise bearing the phrase "Mount Bohemia" before it filed its Fraudulent Applications. Indeed, Black Bear admits in its responses to Lac Labelle's first discovery requests that it knew such merchandise was being sold by a business known as Laughing Loon in 2019, but did nothing about it. Black Bear also admits that several other businesses have sold similar merchandise.

35.     The Fraudulent Applications included declarations stating that no other person, firm, corporation or association had a right to use the mark in the manner being applied for.

36.     Black Bear executed those declarations.

37.     Black Bear's declarations were fraudulent, because:

     a.     there was use by Lac LaBelle and others of Mount Bohemia at the time that Black Bear it signed the Fraudulent Applications with the statutorily prescribed oath;

     b.    that consistent use by others preceded Black Bear's use;

    c.   the phrase "Mount Bohemia" had long since been in common use to describe the hill on which Black Bear now operates; and

    d.   Black Bear was aware of all these things.

38.    Black Bear never disclosed to the USPTO any of the third-party or descriptive uses being made of the phrase "Mount Bohemia" on clothing and other merchandise.

39.    Black Bear verified in its applications that to the best of its knowledge and belief, no one else had the right to use the Mount Bohemia marks in commerce, either in identical or confusingly similar form.

40.    Black Bear did not, however, hold that view to the best of its knowledge and belief. To the contrary, it both knew and believed (or, alternatively, should have known) that others did have the right to use the phrase "Mount Bohemia" on clothing and other merchandise to refer to the hill on which Black Bear now operates.

41.    At the time the Fraudulent Applications were filed, Black Bear had no reasonable basis for its averred belief that no other person had the right to use the same or a confusingly similar mark on or in connection with the goods or services identified in the Fraudulent Applications.

42.    Therefore, Black Bear made false representations to the USPTO about its exclusive ownership and use of the MOUNT BOHEMIA mark.

43.    Black Bear knew the representations were false when made.

44.    Black Bear intended to deceive the USPTO by executing the declarations.

45.    The USPTO reasonably relied upon such false representations.

46.    Lac LaBelle (and others) are and were injured as a result of reliance upon such false representations.

47.     The false representations were material to the issue of registrability of the Fraudulent Registrations.

Wherefore, Lac Labelle requests that the Court issue an order cancelling the Registrations, or alternatively, cancelling the Fraudulent Registrations, and granting Lac Labelle any further relief the Court deems just and warranted.

### Count III – Cancelation of Reg. No. 6135271 (Fraud)

48.     Lac Labelle incorporates herein by reference each of the foregoing paragraphs.

49.     On January 23, 2020, Black Bear filed U.S. Trademark Application Serial Number 88770426 (the "'426 Application"). This is the Fraudulent Application that became Black Bear's Registration No. 6135271.

50.     The '426 Application contains an "Additional Statements Section," a portion of which is labeled "Significance of Mark."

51.     In that "Significance of Mark" section, Black Bear wrote "MOUNT BOHEMIA appearing in the mark has no significance nor is it a term of art in the relevant trade or industry or as used in connection with the goods/services listed in the application, ***or any geographical significance.***" (Emphasis added.)

52.     Black Bear's representation that "Mount Bohemia" did not have "any geographical significance" is false, and was false at the time it was made. To the contrary, Black Bear subjectively understood at the time this statement was made that the name "Mount Bohemia" was commonly used to refer to the hill on which it operates its business.

53.     Indeed, in its responses to Lac Labelle's first set of discovery requests, Black Bear admitted that "Black Bear is aware that the hill on which it operates its ski resort was commonly

referred to within the Keweenaw County community as 'Mount Bohemia' before Black Bear began its operations in 2000."

54.     At the time the '426 Application was filed, Black Bear knew, or should have known, that the phrase "Mount Bohemia" had geographical significance to its goods, services, and trademark application, not least of which because Black Bear knew that "Mount Bohemia" had long been the name of the hill on which it offered its goods and services.

55.     Therefore, Black Bear made false representations to the USPTO about the geographic significance of the MOUNT BOHEMIA mark.

56.     Black Bear knew the representations were false when made.

57.     Black Bear intended to deceive the USPTO by executing the declarations.

58.     The USPTO reasonably relied upon such false representations.

59.     Lac LaBelle (and others) are and were injured as a result of reliance upon such false representations.

60.     The false representations were material to the issue of registrability of Registration No. 6135271.

Wherefore, Lac Labelle requests that the Court issue an order cancelling Registration No. 6135271, and granting Lac Labelle any further relief the Court deems just and warranted.

**Demand for Jury Trial**

Pursuant to Fed. R. Civ. P. 28, Counter-Black Bear hereby demands a jury trial on all issues so triable, with respect to both Plaintiff's claims and to Defendant's counterclaims.

Respectfully submitted,

Date: November 17, 2021                Warner Norcross + Judd LLP

By: /s/ Brian D. Wassom
Brian D. Wassom (P60381)
Attorney for Defendant Lac La Belle Lodge, Inc.
45000 River Ridge Dr., Suite 300
Clinton Twp., MI 48038
(586) 303-4139
bwassom@wnj.com

## CERTIFICATE OF SERVICE

The undersigned hereby states and affirms that on the date set forth below she caused the foregoing document to be filed and served using the Court's CM/ECF system, which shall send notification of such filing to all attorneys and parties of record, and there are no non-ECF participants in this matter.

Dated: November 17, 2021                By: /s/ Kimberly Bankeroff